**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DENNIS KRUTSCH,

      Plaintiff,

                                       Case No. 04-CV-73455-DT

v.

                                       HONORABLE DENISE PAGE HOOD

DETROIT-MACOMB HOSPITAL CORP.,
ST. JOHN HEALTH SYSTEM, and
ASCENSION HEALTH SYSTEM,

      Defendants.

_____/

**<u>MEMORANDUM OPINION AND ORDER</u>**

**I.     BACKGROUND/FACTS**

On September 3, 2004, Plaintiff Dennis Krutsch filed the instant class action against Defendants Detroit-Macomb Hospital Corp. ("Hospital"), St. John Health System ("St. John"), and Ascension Health System ("Ascension") alleging: Breach of Contract/Third-Party Beneficiary (Count I); Breach of Contract (Count II); Breach of Duty of Good Faith and Fair Dealing (Count III); Breach of Charitable Trust (Count IV); Michigan Consumer Protection Act (Count V); Unjust Enrichment/Constructive Trust (Count VI); and, Injunctive/Declaratory Relief (Count VII).

Plaintiff sought emergency medical treatment at Defendant Hospital for an esophageal obstruction on September 24, 2002. (Complaint, ¶ 26) Before treating Plaintiff, Defendant Hospital required Plaintiff to sign a form promising to pay Defendant Hospital in full for unspecified and undocumented charges for medical care that were to be set by Defendant Hospital in its sole discretion. (Complaint, ¶ 27) Plaintiff received a statement of account from Defendants Hospital and St. John in the amount of $3,702.75. (Compliant, ¶ 28) Plaintiff sought reduction in the charges. Plaintiff was told by a representative of Defendant St. John that "there are no discounts, the charges

are what they are and they are reasonable and customary." (Complaint, ¶ 29) Plaintiff was told by the representative that insurance companies are charged substantially less, but justified this position by stating: "We have a contract with the insurance company, we don't have a contract with you!" (Complaint, ¶ 29)  Defendant Hospital referred the matter to its collection agency. (Complaint, ¶ 30) Defendant Hospital eventually agreed to give Plaintiff a 10% discount on the account but only because Plaintiff was paying by cashiers' check. (Complaint, ¶ 30) Plaintiff claims that despite the 10% discount, the fee paid by Plaintiff was still grossly inflated and was substantially greater than what Defendants charge insurance companies for the same services. (Complaint, ¶ 30)

Plaintiff claims Defendants have applied for and have received a federal income tax exemption as a purported "charitable" institution under 26 U.S.C. § 501(c)(3). (Complaint, ¶ 15) By accepting this favorable tax exemption, Plaintiff claims Defendants explicitly and/or implicitly agreed to the following:

> to operate exclusively for charitable purposes; to provide an emergency room open to all of their uninsured patients without regard to their ability to pay for such care; to provide affordable medical care to all of their uninsured patients; not to charge their uninsured patients the highest and fully-undiscounted cost for medical care; not to charge their uninsured patients a higher rate for medical care than insured patients; to use their assets and revenues to provide affordable medical care to their uninsured patients; and not to pursue outstanding medical debt from their uninsured patients through humiliating collection efforts, lawsuits, liens and garnishments.

(Complaint, ¶ 15) Plaintiff claims Defendants have breached their Agreements with the United States Government and the various state and local governments. (Complaint, ¶ 16) Plaintiff claims that Defendants' charges for medical services are highly inflated and bear no connection to the actual cost of providing the service. (Complaint, ¶ 17) While Defendants give private insurance

companies and governmental third-party payors, like Medicare and Medicaid, large discounts on this gross or "sticker price," most of their uninsured patients are charged 100% of the full sticker price, which is two to three times more than Defendants charge their insured patients for the same service. (Complaint, ¶ 17)

       Plaintiff claims Defendants' websites and marketing materials pay special attention to their commitment to, and services for, uninsured patients.  Defendant St. John's website states, "St. John Health's size means we have a stronger voice when advocating for those who have no voice–the uninsured and poor."  (Complaint, ¶ 8) The website further states, "St. John Health, as a Catholic health ministry, is committed to providing spiritually centered, holistic care which sustains and improves the health of individuals in the communities we serve, with special attention to the poor and vulnerable."  (Complaint, ¶ 8)

       Plaintiff claims Defendant Ascension's mission stated in its website states, "Rooted in the loving ministry of Jesus as healer, we commit ourselves to serving all persons with special attention to those who are poor and vulnerable.  Our Catholic health ministry is dedicated to spiritually centered, holistic care, which sustains and improves the health of individuals and communities.  We are advocates for a compassionate and just society through our actions and our words." (Complaint, ¶ 9) Defendant Ascension's website further states, "Through our resources and our presence in so many communities, we have an opportunity to amplify the voices of those most in need, including the uninsured and the underserved."  (Complaint, ¶ 9) Defendant Ascension notes, "The Crisis of the Uninsured," stating, "Nearly 44 million Americans, including eight million children, do not have health insurance coverage.  Ascension Health finds that number staggering.  Through local and national initiatives and critical partnerships, we are committed to making the system work and

3

improving the health of the communities we serve." (Complaint, ¶ 10) According to Defendant Ascension Health's 2003 Annual Report, it had total assets of $11 billion, total operating revenue of $9.1 billion, and 63 general acute care hospitals, including Defendant St. John Macomb Hospital. (Complaint, ¶ 12)

In return for substantial tax exemptions, Plaintiff claims that Defendants entered into express and/or implied Agreements with the United States Government and various state and local governments to provide affordable medical care to all their patients. (Complaint, ¶ 14) Plaintiff claims Defendants' uninsured patients were the express and/or implied intended third-party beneficiaries of such Agreements. (Complaint, ¶ 14)

This matter is before the Court on Defendants' Motion to Dismiss the Class Action Complaint. A response has been filed by Plaintiff and a reply brief filed by Defendants. Defendants have also filed numerous supplement briefs (at least 15), without leave of court. The Court notes that E.D. Mich. LR 7.1 only provides for a brief in support of a motion, a response and reply briefs.

## II.    ANALYSIS

### A.    Standard

Defendants do not identify which procedural rule they are proceeding under in their Motion to Dismiss. Upon review of their briefs, the Court assumes Defendants are proceeding under Fed. R. Civ. P. Rule 12(b)(6).

Rule 12(b)(6) of the Rule of Civil Procedures provides for a motion to dismiss for failure to state a claim upon which relief can be granted. This type of motion tests the legal sufficiency of the plaintiff's Complaint. *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986). In evaluating the propriety of dismissal under Rule 12(b)(6), the factual allegations in the Complaint

must be treated as true. *Janan v. Trammell*, 785 F.2d 557, 558 (6th Cir. 1986). If matters outside the pleading are presented in a Rule 12(b)(6) motion, the motion shall be treated as one for summary judgment under Rule 56(b) and disposed of as provided in Rule 56.

### B.     Whether Section 501(c)(3) Creates a Contract

Defendants argue that 26 U.S.C. § 501(c)(3) does not create a contract for the benefit of Plaintiff or the public in general. Plaintiff argues that § 501(c)(3) creates a contract because it provides a benefit in exchange for Defendants' agreement to take on certain obligations.

The Supreme Court has held that the presumption is that statutes are not, and do not create, contracts. *See Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.,* 470 U.S. 451, 455-66 (1985). "[A]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'" *Id.* (quoting *Dodge v. Board of Education,* 302 U.S. 74, 79 (1937)). The Supreme Court has noted that statutes characterized as tax exemptions are not intended to form a contract. *See County of Stanislaus v. San Joaquin & King's River Canal & Irrigation Co.,* 192 U.S. 201, 208 (1904).

All organizations are subject to Federal income taxation pursuant to 26 U.S.C. § 501(a). Section 501(a) states, "[a]n organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503." 26 U.S.C. § 501(a). Section 501(c)(3) lists the type of organizations which may be exempted from taxation:

> Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, *charitable,* scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but

5

only if no part of its activities involve the provision of athletic facilities or equipment), or for prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office.

26 U.S.C. § 501(c)(3)(emphasis added). Based on § 501(c)(3), certain organizations are exempt from Federal income taxation if an organization can demonstrate: 1) it is organized and operated exclusively for certain specified exempt purposes; 2) no part of its net earnings inures to the benefit of a private shareholder or individual; 3) no part of its activities constitutes intervention or participation in any political campaign on behalf of any candidate for public office; and 4) no substantial part of its activities consists of political or lobbying activities. *Am. Campaign Acad. v. Commissioner,* 92 T.C. 1053, 1062, 1989 WL 49678 (1989).

The term at issue in § 501(c)(3) is the term "charitable." The term "charitable" is not defined in § 501(c)(3) but is used in its generally accepted legal sense. *See Nationalist Movement v. Commissioner,* 102 T.C. 558, 1994 WL 118959 (1994). The Supreme Court has stated that, "charitable exemptions are justified on the basis that the exempt entity confers a public benefit–a benefit which the society or the community may not itself choose or be able to provide, or which supplements and advances the work of public institutions already supported by tax revenues." *Bob Jones Univ. v. United States,* 461 U.S. 574, 591 (1983). Congress listed "charitable" organizations because Congress sought to provide tax benefits to these types of organizations to encourage the development of private institutions that serve a useful public purpose or supplement or take the place of public institutions of the same kind. *Id.* at 588. It is well settled that the promotion of health for

6

the benefit of the community is a charitable purpose. *See Redlands Surgical Servs. v. Commissioner,* 113 T.C. 47, 73, 1999 WL 513862 (1999).

The Commissioner for the Internal Revenue Service ("IRS") determines whether an organization qualifies for tax-exempt status under § 501(c)(3), and, if the Commissioner determines that an organization does not qualify for tax-exempt status, the organization may, after exhausting its administrative remedies, seek judicial review of the matter before the United States Tax Court. *See Houston Lawyer Referral Serv., Inc. v. Commissioner,* 69 T.C. 570, 571, 1978 WL 3279 (1978). The burden of proof is on the organization to overcome the grounds for denial of the exemption set forth in the Commissioner's determination. *See Fla. Hosp. Trust Fund v. Commissioner,* 103 T.C. 140, 664-65, 1994 WL 400439 (1994). The scope of review of the Tax Court is limited to the propriety of the reasons given by the Commissioner for denying an organization's application for exemption. *See Aid to Artisans, Inc. v. Commissioner,* 71 T.C. 202, 208, 1978 WL 3269 (1978).

Upon this Court's review of § 501(a) and § 501(c)(3), the Court finds there is no clear language indicating that Congress intended to bind the Government and the organizations listed in § 501(c)(3) in any contractual manner. Section 501(a) merely sets forth the requirements for an organization to be exempt from taxation. Section 501(c)(3) merely lists the type of organizations who meet certain requirements, including that the net earnings of such organizations not inure to the benefit of a private shareholder or individual, that no part of their activities constitutes intervention or participation in any political campaign on behalf of any candidate for public office, and no substantial part of its activities consists of political or lobbying activities. If the Commissioner finds an organization meets these requirements, then the Commissioner may grant that organization a tax exemption.

Plaintiff does not challenge Defendants' status as a § 501(c)(3) organization nor does he challenge the Commissioner's decision to grant Defendants a § 501(c)(3) tax exemption status. Plaintiff claims that because Defendants have been granted such a status they have a contractual duty under the statute to provide certain benefits to Plaintiff and the public at large. However, as noted above, the language found in § 501(c)(3) simply does not create such a contractual right.

Plaintiff cites the Hill-Burton Act, 42 U.S.C. § 291, to show that § 501(c)(3) is similar to that Act. Courts have held that the Hill-Burton Act confers an enforceable contract between hospitals and the Government citing *Flagstaff Medical Center, Inc. v. Sullivan,* 962 F.2d 879, 889-91 (9th Cir. 1992). The Ninth Circuit in *Flagstaff* held that patients were entitled to recover as intended third-party beneficiaries under the Act based on an agreement between the federal government and the medical center because the hospital received funds under the Act. *Id.* The Hill-Burton Act is distinguishable. The Act was a grant-giving statute enacted by Congress to modernize hospitals. The Act provided direct funds to the hospitals and, in exchange, hospitals provided a "reasonable volume of medical services to persons unable to pay." *Id.* at 882. Section 501(c)(3) does not provide funds but exempts organizations from paying income tax. The Hill-Burton Act allowed a private cause of action to enforce the Act. *Id.* at 887; 42 U.S.C. § 300s-6. Under § 501(c)(3), only the IRS or the organization seeking tax exemption may challenge the Commissioner's decision. *Bob Jones Univ.,* 461 U.S. at 596-98; 26 U.S.C. § 7428(a). The Supreme Court "has long recognized the primary authority of the IRS and its predecessors in construing the Internal Revenue Code" and has the responsibility, in the first instance, to determine whether a particular entity is "charitable" for purposes of § 501(c)(3). *Bob Jones Univ.,* 461 U.S. at 596-98.

Plaintiff also argues that § 501(c)(3) provides a benefit in exchange for a recipient's

agreement to take on certain obligations which agreement is enforceable based on common law contract principles, citing a Sixth Circuit case, *United States v. Miami Univ.,* 294 F.3d 797, 808-09 (6th Cir. 2002). *Miami Univ.,* addressing the Family Education Rights and Privacy Act ("FERPA"), is also distinguishable. The Sixth Circuit held that a "[s]pending clause legislation, when knowingly accepted by a fund recipient, imposes enforceable, affirmative obligations upon the states." *Id.* at 808. The Sixth Circuit noted that the Supreme Court has repeatedly recognized a court's equitable powers to enforce a spending clause obligations and conditions under various statutes. *Id.* at 809. "The FERPA unambiguously conditions the grant of federal education funds on the educational institutions' obligation to respect the privacy of students and their parents. *Id.*

Section 501(c)(3) does not grant any federal funds and does not condition the grant of any funds on any obligation undertaken by the organization. Section 501(c)(3) sets forth requirements which an organization must first meet in order to be exempted from income taxation. If an organization does not meet the requirements, then the Commissioner has the authority to deny the organization tax-exempt status. Unlike FERPA, or any grant funding statute, § 501(c)(3) does not authorize any funds to be disbursed by the Commissioner, nor does § 501(c)(3) obligate the organization to provide certain services in exchange for anything since no funds are disbursed under § 501(c)(3). Should the IRS determine that an organization no longer qualifies under § 501(c)(3), it has the authority to revoke the organization's § 501(c)(3) status. 26 U.S.C. § 7428. Once an organization receives § 501(c)(3) status, the Code imposes no duty upon an organization to gain pre-clearance from the IRS before embarking on activities that may or may not violate § 501(c)(3); it may, however, face revocation of its exemption. *Abortion Rights Mobilization, Inc. v. Regan,* 544 F.Supp. 471, 487 (S.D. N.Y. 1982).

9

Based on the above analysis, the Court finds that § 501(c)(3) does not create an express or implied contract.  Plaintiff has failed to state a breach of contract/third-party beneficiary cause of action under federal law based on § 501(c)(3).

The Court is aware that there are millions of uninsured individuals and that healthcare costs continue to rise.  The Court is also aware that there are private healthcare entities with substantial assets which meet the requirements for § 501(c)(3) tax exemption status.  Whether these entities and other entities in the healthcare industry should be required to provide affordable healthcare to those who are uninsured or to those who cannot otherwise afford healthcare, as a requirement for § 501(c)(3) status, cannot be solved in this instance by a court ruling.  Congress and the Executive branch, with input from individuals and the healthcare industry are available to address this problem.  The Supreme Court in *Bob Jones* recognized that the IRS can base its rulings based on Congress' actions or inaction.  *Bob Jones Univ.,* 461 U.S. at 599-600.  The source of IRS authority is Congress, who can modify IRS rulings it considers improper.  *Id.* at 596.  The Supreme Court noted that continuing interpretation of § 501(c)(3) is unavoidable.  *Id.* at 597.  In *Bob Jones Univ.*, the Supreme Court noted that the IRS's ruling that a racially discriminatory private school was not a "charitable" organization under § 501(c)(3) was based on a national policy against racial discrimination, the same position taken by all three branches of the Federal Government.  *Id.*  At this moment in time, Congress and the Executive branch have not set forth a clear national policy addressing the multitude of uninsureds or those who cannot afford healthcare in this country.  Any determination by the IRS that a health care organization is "charitable" under § 501(c)(3) cannot be challenged in this setting in the first instance.

### C.    Remaining State Law Claims

10

Because the Court has ruled that § 501(c)(3) does not create a contract between the Government, the organization and the public as a third-party beneficiary, there are no federal questions remaining.  "The Sixth Circuit holds that generally, if the federal claims are dismissed before trial, the state claims should be dismissed as well."  *Barber v. Pepsi-Cola Personnel, Inc.*, 78 F. Supp. 2d 683, 695 (W.D. Mich. 1999) (citing *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996); *Landefeld v. Marion General Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993)).  The Court dismisses without prejudice the remaining state law claims. Plaintiff may file an action before the State courts as to the remaining state law claims.

## III.   CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendants' Motion to Dismiss **(Docket No. 11, filed October 15, 2004)** is GRANTED as to the federal claims.  The federal claims are DISMISSED with prejudice. The remaining state law claims are DISMISSED without prejudice.


  /s/ DENISE PAGE HOOD
DENISE PAGE HOOD
United States District Judge

DATED: October 11, 2005

11